Good morning, Your Honor. May it please the Court. Rodel Rodis, representing the petitioners. Your Honor, the government's brief in opposition to our appeal cites three factors. They said that this Court has no jurisdiction because U.S.C. 1252 removes the agency's discretionary determination from the Court's jurisdiction. They further assert that the challenges to the Board's weighing of factors in making a reasonable diligence determination does not raise constitutional claim or question of law and do not restore jurisdiction. And number three, that even if this Court exercises jurisdiction, it should defer to the agency's interpretation of reasonable diligence because responsibility for that interpretation lies with the Board of Immigration Appeals. Your Honor, this matter came before the Board of Immigration Appeals twice. When it first came up on the issue of the political asylum claims of the respondents, the BIA affirmed the decision of the immigration judge and denied the political asylum, but pointed out that there may be claims for 212K waiver relief that should be considered. And in the words of the Board of Immigration Appeals, this case was remanded back to the immigration judge, quote, because the immigration judge possesses original jurisdiction to adjudicate an application for a waiver. The immigration judge then considered the waiver issues. The government posed the issue of matter of Aurelio, why discretionary waiver or the waiver should not be granted in favor of the respondents. But after considering the eight factors she cited, which I cited in our brief, she approved the waiver applications in favor of the respondents, which the government then appealed and said that the immigration judge does not have jurisdiction to decide on the waiver application. After the Board of Immigration Appeals had specifically granted and said that the immigration judge has the jurisdiction to adjudicate an application for a waiver. Now, I can imagine the reaction of the immigration judge. We hear from district judges sometimes a complaint about mixed messages from us. I imagine the immigration judge wondered what hit him, but so that happens sometimes. What do we make of it? Yes. Now, the issues that were raised by the government about jurisdiction were settled by this court in 2005 in the case of Limon v. Gonzalez that was decided on April 19, 2005. In that case, this Ninth Circuit stated that the determination of whether the petitioner knew or should have known of her inadmissibility is essentially factual in nature, determined through the application of traditional legal standards. Likewise, reasonable diligence is a factual determination resolved by the application of a legal standard to the facts in question. Indeed, reasonableness is a common legal standard and an objective one at that,  Now, in the case of Limon v. Gonzalez, there is a fact which is repeated in numerous citations of the government, but Limon states. What's the name of that case? Limon v. Gonzalez, the citation, its agency. I can give the citation. It's Corazon Martin Limon v. Albert Gonzalez. Is it cited in your brief? No, Your Honor. I found it after. But it's. Did you send a 12-J letter to us indicating the citation? No, Your Honor. Do you have a citation there? Yes.  03-71896, if I may pass this, Your Honor. Is this a new case? No. This is a 2005 case. What's the citation to it? It looks like you have the slip of opinion there. Is that correct? Yes, Your Honor. Then go ahead and give us the case number again, please. 03-71896. Okay. Well, it's this very surprising case. Which this was our court? Yes. Before Michael Daley Hawkins, Honorable Margaret McKeown, and Richard Clifton. You can't trust him. That's a two out of three. This reasonableness issue, I had thought that that's sort of like negligence. There are specific facts you have to find, but then you apply that. And I thought this reasonableness thing was more of an application. So you have fact and law. But this case may change my mind. I think so, Your Honor, especially the facts of this case. If I may proceed. When this case came back up to the Board of Immigration Appeals, the Board of Immigration Appeals looked at the facts that the government presented to be facts. And it is notable that on the page where they discuss this issue, the Board of Immigration Appeals says this. The record further reflects that when the respondent submitted his application in 1996, six years after the death of his brother, he listed his brother as living at an address in the state of Virginia and did not indicate that he was diseased. In addition, he provided an affidavit of support completed by the petitioner before his death. These two facts were cited repeatedly. And at the bottom, when it analyzes the issue of the facts again and applying it, these same facts were presented once again as the reasons why the Board of Immigration Appeals supported the issue. The facts, Your Honor, there's an expression, we're entitled to our own opinions, but we're not entitled to our own facts. That's what applies here. If we look at the Exhibit 8, which is the application that Mr. Edralin filled out, it asks the question, name and address of sponsoring person. And it puts Demetrio and Leda Edralin. Not just Demetrio, but him and his wife. During the trial, or at the hearing, he was asked, why did you put down he was living there when, in fact, he was dead? And you know he was. Answer, because the address, that's where they reside. As a matter of fact, as of now, they are still there, my sister-in-law and my niece and nephews. Question, but you knew Demetrio was dead. Is that right? Answer, yes. Question, but you just put the address of where he was living when he was alive? Yes. Now, no further questions came out on that issue. Now, the next, the point that also should be raised that he answered is that the page before that application, it asks about his father and his mother, and there is a parenthesis there, or it's in there, if deceased, so state, given year of death. If deceased, so when he was filling out, he said, he explained, he put down the date of death because it asked for it. In this particular one, when it was asking, he didn't ask for his death. Can we back up just a minute? I give all the credit in the world to your clients. They waited in line. They didn't try to jump the line, and I give them all the hurrahs in the world. They should get every opportunity, in my judgment, to make it through. That's fine. But I can see the problem when your client knows that this person is his sponsor, and the sponsor then has to be living to be a sponsor, and his brother is also going to Once a person is dead, they can't do that. The government says, look, you say he's living at this address. He wasn't. He was at a cemetery. Look, you say he's going to be your sponsor, but he can't be. So then they say, okay, you go back and find another sponsor. We'll keep you at the head of the line. But you're indicating that they were wrong, that your client reasonably filled out this that he's living at the address, and that he will be able to sponsor him so he won't become a ward of the government. How do you make that jump? Well, I understand. The question was he didn't know. But there's another point before I run out of time. This other point is that the government states as a matter of fact, which the Board of Immigration Appeals held, is that they said he submitted the affidavit of support of his dead brother, and then when that wasn't sufficient, he submitted a cousin's affidavit of support. At the hearing, he was asked about that issue, and he stated that the petition, when it was filed by his brother in 1977, included at that time the affidavit of support, because at that time in 77, in some of the petitions, because it wasn't such a long wait, that you submit your affidavit of support at the same time you filed your petition, which is what happened in this case in 1977. The laws changed and the procedures changed later where you submit the affidavit of support later on. The question of the cousin is an interesting one, because the government insists that as an issue, that when that didn't work, he submitted his cousin's affidavit of support. At the trial or at this hearing, he was asked about his brother, the cousin, and he stated at the hearing, and this was not refuted, that he asked his cousin to fill out an affidavit of support, and the affidavit of support was given to him by his cousin, but he's asked, do you remember to whom you gave your cousin's affidavit of support? And he said, I think nobody ever asked for it. So he had it with him. He never submitted it. That was a cousin's affidavit. Yes. Not his brother's. Not his brother's. The brother's was submitted in 1977 at the time the petition was filed. So the issue was the cousin then becomes the supporting relative. But the cousin's affidavit of support was never submitted. He asked for it, he got it, but he never submitted it. But the government said it like it was a fact when the facts at the hearing, which was in front of the immigration judge who heard the facts, the immigration judge heard the facts that are in the transcript. The Board of Immigration Appeals relied on what the government said were the facts, and those two facts that jumped out that were in the decision of the Board of Immigration Appeals turns out when you examine the actual factual evidence of the hearing, where it's not the facts. Again, we're entitled to our opinions, but we're not entitled to our own facts. The facts stand as part of the record. So I'd ask that the Court reconsider this, look at the actual evidence and not facts that the government simply asserted as facts, and find that the judge, immigration judge who heard the case, who was given original jurisdiction to decide this issue by the Board of Immigration Appeals, adjudicated properly in favor of the Petitioners in this case. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Joanna Watson on behalf of Respondent, United States Attorney General. And I just want to initially address the Lemon case that Petitioners' Counsel had cited to. I have the citation to that, if you'd like. It is 404-F3D-1143, and that was filed in 2005. However, I have another citation to 410-F3D-597, in which this Court vacated that decision. So I just want to point out that that decision basically doesn't exist anymore, so. Tell me again. It's been vacated. The case you just cited? Yeah, Lemon, that Petitioners' Counsel had cited. I just wanted to bring that to your attention. It was vacated? So there was a published opinion, but the panel withdrew it? Correct. It was withdrawn. It was a 212-K case, but it was withdrawn due to information that came out, I think, with the person who had petitioned for the visa. There were some issues. In any event, its Respondent's argument that pursuant to INA section 242, this Court has held that an entirely discretionary decision is not subject to review. But how is this an entirely discretionary decision? Well, that's where the issue is. What we frequently encounter, what I think we're encountering here, is a question of eligibility, and after that there's a place to exercise discretion. And here it seemed to me the determination of the BIA wasn't an exercise of discretion. They decided he wasn't eligible under the statute. Well, that's the kind of thing we ordinarily do review. Correct, that there is a distinction between statutory eligibility versus discretionary determination, but that ---- Is there something in the BIA's decision that suggests to you the exercise of discretion? It's just the wording of the statute, which gives the Attorney General, it says, may exercise this discretion. And it has eligibility requirements such as the alien has to be inadmissible pursuant to certain paragraphs, has to be in possession of an immigrant visa, if otherwise admissible, and then it goes into the discretionary. What I ---- I view this in the pattern we see in other contexts. This is a somewhat more unusual context, but it's the same pattern. That is, there are statutory requirements so that the Attorney General doesn't have the discretion just to admit anybody he wants, waive anything he wants. You have to pass certain tests. And at that point, there's room for the exercise of discretion. And we routinely wind up passing on eligibility for asylum, for example, after which the Attorney General still has the right to exercise discretion. That doesn't strip us of jurisdiction to deal with the statutory eligibility. And as I read the BIA's decision, it was deciding that this person wasn't statutorily eligible because he did not exercise reasonable discretion or, excuse me, reasonable diligence with regard to his eligibility, in particular the passing of his brother. Now, can you show me something in the BIA decision that suggests that it's based on an exercise of discretion rather than a determination that he wasn't statutorily eligible? The board relied on that he hadn't exercised reasonable diligence. So it's just whether that reasonable diligence determination is a discretionary subjective determination as opposed to a legal question. In a factual determination, or you perceive reasonable diligence to be a factual or a legal determination? Well, for jurisdiction, because constitutional questions and questions of law would fall under if it were shown to be a legal determination, but this, we're arguing that it's purely discretionary determination. Well, why is a finding a discretionary determination? I understand the Attorney General can exercise discretion. Right. And he can use anything he wants to say in the end, this alien doesn't get waived, doesn't come in, whatever. But the first part, that is the eligibility part, is that ordinarily viewed as a discretionary element? Not the eligibility. The admissible, you know, he's in possession of a visa, and if he's otherwise admissible, I think those would be things that you could look to. But then when it comes down to that actual determination, being at his discretion, he's in the – but not with – pardon me. I didn't understand your answer. Is it a legal question or a factual question? If you were to find jurisdiction. Yeah. Then I would say it's a legal determination based on undisputed facts. So it would come in as – Say that again. It's a legal determination. Kind of under Ramadan. Legal question based on undisputed facts. Undisputed facts. A question of law and fact. So are there undisputed facts? So it would be de novo review with deference. So you're agreeing there are undisputed facts. Undisputed facts or undisputed facts? Undisputed. Undisputed facts, I'm saying. The facts are – I know that the District Attorney's counsel had discussed how there was a dispute in facts here. But the facts are – there's no dispute. The board didn't find – make a clearly erroneous finding in the factual determinations here. Let me call your attention to that. Yes. Because the board didn't find clearly erroneous. And yet, as I read the IJ's decision, particularly the end of it, which talks about – well, did these people understand what was going on or not? Were they trying to hide something or not? The IJ clearly comes down on the side of they clearly did not intend to mislead the government when they filled out the papers. They did not testify in an evasive manner. They were simply following what was put in front of them and didn't think about asking about the effect of a 6-year-old death. Those sound like factual determinations based on the testimony of the Respondent. I'm not sure how they translate to or how they fit with the BIA's determination that these people did not exercise reasonable diligence. I mean, the IJ is saying they did what they thought they were supposed to do. What is it that tells us there was something more they were supposed to do to satisfy the requirement for reasonable diligence? Well, the board based – I mean, the IJ initially distinguished matter of Aurelio, which is very similar facts to this case. But the board looked at – I mean, the facts are the same. They were – the father applied for a visa on their behalf. It got approved, and then it didn't become available until – it's unfortunate that it took 19 years through the State Department for somebody who's the brother of a U.S. citizen to come through. And the facts are still the same that the brother passed away 6 years before. The board just looked at those facts, same facts the immigration judge, and came to a different result. But he didn't – But how does that – but based on what? I mean, if the statute specifies reasonable diligence, and the IJ is saying if the forum had asked for information about the passing away of the sponsor, Respondents would have provided the information. All they're doing is filling out the forms and answering the questions presented to them. How does that fall short of reasonable diligence? Well, like the board found, he went so far as to write down 6 years after the fact he presented to the consulate. That's exactly the factual situation which you described as undisputed, that the IJ said they did what they thought they were supposed to do. So what's not reasonable diligence? The board can look at it anew on those same facts and still come to a different determination. It's allowed to do that.  Well, no. Stop for a second. I mean, how – they can't, if they're changing the factual determinations, without applying a clear air standard. Isn't that correct? The factual – I mean, if they're – Yeah, they're – So if somebody is filling out a form given to them by the government agent, Respondent was the consul in the consul's office that they had their interview, responding honestly to the questions put to them, not having the intent to hide anything, if they had asked, they would have described the brother's death. Those are the findings of the IJ. How can that be found by the BIA not to constitute reasonable diligence? And what is it that the BIA is changing, if not a factual determination? Well, it's relying on his President's decision where, in a similar circumstance, they found that it didn't act with reasonable diligence. In that case, there are – In that case, was there an IJ finding that the Respondent answered all the questions put to him and would have told about the brother's death if he'd been asked? It was the father, I guess, that had passed away in that case, and she – It was at this time. During the events in question. Here we have a death that's six years before. Right. And this was one year prior in Mano Rivelio, and they found that that wasn't diligent when she knew when she applied – when her father applied on her behalf for the visa that he was sick and he was older. And she had known for a year when her visa finally became available, and she knew for a year that he had passed away, and they found it unreasonable. Let me be more pointed on this, because I don't know that that really answers the question. You say the BIA compares it to Aurelio. My question is this. If you accept as a matter of a factual finding, not altered by the BIA applying the clear air standard, that the individual in question answered all the questions honestly, filled out the form, would have described or told about the brother's death if he'd been asked about it, but didn't because he didn't know it was important. How does that support a finding or determination? I'll get away from the word finding. How does that support the conclusion that the petitioner did not show reasonable diligence? What more do you expect from a petitioner if he doesn't know that the fact in question is important and he's never asked? The reasonable – the burden's on the alien with the reasonable. And the IJ found the burden had been met. Right. And the BIA is reaching a different conclusion, and it can, but I don't understand how it can without applying the clear air standard, because this is a factually driven determination. What's the legal part of this? Based on the facts that I outlined, if you have to accept as a given that the petitioner, the alien, doesn't know that this fact of his brother's death makes a difference and he's never asked about it, and he would have told about it if he'd been asked, where does he fall short of satisfying the reasonable diligence requirement? Because is it reasonable to actually write down the name of your brother and provide an address when he's not living? But that's the point. When he filled out the original form, his brother – And is it reasonable? And there was actually – Let me ask the question. He fills out a form, and at that time his brother is living, and he's living at this address. No, no, no. No, when he filled out the form is when he was with the consulate. The first form, 1977. The first form. And he provided an affidavit at that time. Okay. Let me ask the question before you answer it, please. I'm sorry. I apologize, Your Honor. So then it comes before the IJ, and the IJ says, Now these people have been waiting 19 years. That's almost 20. That's almost – Correct. That's a fifth of a century. Unfortunate. Only looking over at the embassy in Manila can you get a vision of what that is. And she says in summary, in summation, While this is a close call and the issue is one of fact, this court believes that the proper approach is to give the benefit to the respondents. They did not testify in an evasive manner about these issues. They clearly did not intend to mislead the government when they filled out the papers. To them, they were simply following the procedures put in front of them and did not think of asking about the effect of the six-year-old death petition. Now, we may say, that's a very strange finding. I don't think I'd found that. But this was the fact finder. After the fact finder, she listened to them. Given these circumstances, this court does not believe it was – it is reasonable to expect them of thinking to ask about the effect of the cause of the death petition. Now, that's a factual finding. Now, I'm not sure I would have made that factual finding. But it is a factual finding in the record. They didn't try to mislead. There's no reason for them to ask the question. Then the I.J. says there was a reason for them to ask the question. I mean the board. I don't know how the board can do that unless they're going to hear the whole case have an issue. I see what you're saying. The board did what it did. We're not holding you responsible for that. But why isn't that a factual determination for a clear air standard? The way you put it and the way the immigration judge said that it was a factual determination, I see where you're coming from. All I can say is they looked at the facts and – Where he's coming from and where he's going. Pardon me? Where he's coming from and where he is going. Now, the I.J. said – I mean the board said, as I understand it, okay, we aren't accepting this, but we'll put you at the head of the line. You won't have to go back and wait 19 years. Right. Okay. Now, what does that mean? They have – according to counsel, they have an affidavit now from a cousin who will do all the things the judge says. Under – there was one quick thing that I wanted to say about the affidavit that he – one, initially he submitted the affidavit from his brother who had already passed six years later. And then he had another one ready at that time. And that's – the board looked at that. That's part of the facts. And he – while he wasn't sure if he submitted it because they didn't ask for another one, because really they would have no reason to show that your brother is still alive by putting the address, and you submitted an affidavit from him, even though it's older, at that time, during those laws, you didn't have to have an updated affidavit like you do now. So – Okay. So we're going to send him back to Manila. Well, no. I believe that there is a regulation now, and I'm not sure he would fall under it, or I would think that the agency would have tried to look into it or a counselor would have looked into it, that you can keep your preference date. Uh-huh. And if you find somebody else to sponsor you, like the cousin, if he had done that – this didn't – he came in in 96 prior to Arrear's making changes, and I think part of that change was requiring an affidavit from somebody that – an updated affidavit of the person that's sponsoring you. Right. And under that change in law, I believe that in a case like this where somebody had died, instead of making you go back – waiting 19 years again, you'd keep that preference date, and then you'd look and see where you fell on the preferences for the State Department, and for a cousin, you know, you're going to be further down the line as opposed to the brother of a U.S. citizen where he was before, and that person could sponsor you to keep you – you know, he could have stayed – if it was current, that priority date. So there were changes that were made to keep you from being at the total back of the line again. Yeah. I'm just concerned about using a meat cleaver approach, which we usually do, of what the options are. If we conclude that there's been no overturning of the factual finding of the – of the I.J., I don't know where we go from there. But I'm very conscious also that I don't want to muck up the immigration law with unintended consequences that come from good deeds. So I suppose we have to think about that. I understand that. I wish I had a better answer to that. If I were King, there'd be no problem. Because he didn't make a clearly erroneous finding. I mean, looking in the Hoare decision, I mean, he didn't. And I can't say that he did fine. They just looked at the facts and came out with a different result. An unusual set of facts. Yeah. I mean, these are unusual. That's why there's not a lot of case law on the 212K. It doesn't come – you know, they don't come up very often. Thank you. I thank both counsel for the arguments. The case just argued is submitted. As is the next case on the argument calendar, Legkova v. Holder. We'll have one last case. We'll take a short break before we come back for the argument in Goetz v. Boeing.
judges: Wallace, Noonan, Clifton